## COUNTY OF WINDHAM,

##### AT THE

### FEBRUARY TERM, 1861.

---

PRESENT:

HON. ASA O. ALDIS,
HON. JOHN PIERPOINT,
HON. LOYAL C. KELLOGG, } ASSISTANT JUDGES.
HON. ASAHEL PECK,

---

### G. W. & H. P. DODGE, *v.* SMITH & WAITE.

*Principal and agent. Payment. Remittance.*

The defendants being commission merchants in Massachusetts, and having in their hands produce belonging to the plaintiffs, who resided in Vermont, to sell for them, the plaintiffs gave a single special order in respect to a remittance of part of the avails of such sale to them in a particular way. *Held,*

that this did not authorize a remittance by the defendants at the risk of the plantiffs of the balance of the funds in the same way, and that in the absence of any express authority such remittance was at the risk of the defendants.

BOOK ACCOUNT. The auditor reported that the plaintiffs were partners in business, residing at Londonderry, in this State, and that the defendants were partners under the name of Smith & Waite, doing business at Lowell, Mass., as produce and commission merchants; that the account exhibited by the plaintiffs was correct, and that on the 23d day of March, 1855, there was a balance due from the defendants to the plaintiffs of $44.71.

He further reported that the plaintiffs had consigned the produce named in their account to the defendants to be sold on commission, and that about the time the same was received by the defendants, George W. Dodge, one of the plaintiffs, was at Lowell and received part payment therefor, and then directed the defendants to send $150 more to the plaintiffs, through L P. Waite & Co., a firm doing business at Weston in this State; that after the $150 had been sent as directed, and when the produce had all been sold there was a balance of $44.71 due from the defendants to the plaintiffs; that this balance was due at Lowell and that the plaintiffs expected to pay the expense of sending the same to them, and that they knew it was the custom of Smith & Waite to remit money to their customers in this section of the country through L. P. Waite & Co.; that it was the custom of Smith & Waite to do up the money intended for each person in separate bundles, marked with the name of the person for whom it was intended and then enclose the whole to L. P. Waite;—that this balance of $44.71 was sent by Smith & Waite to L. P. Waite for the plaintiffs by express March 23, 1855, and was received by L. P. Waite, but had never been paid over to the plaintiffs; that in April, 1855, Smith & Waite, informed the plaintiffs by letter that such balance had been sent L. P. Waite for them, and that the plaintiffs at several times afterwards called upon L. P. Waite, and claimed that he should pay or account to them for the same.

The court rendered judgment on the auditor's report for the defendants to which the plaintiffs excepted.

*Stoughton & Grant*, for the plaintiffs.

*Butler & Wheeler*, for the defendants.

ALDIS J.—Smith & Waite, commission merchants at Lowell, Mass., had $44.71 of the plaintiffs' money in their hands—payable to the plaintiffs at Lowell. They sent it by express to L. P. Waite & Co., in a package directed to the plaintiffs. L. P. Waite received the package but has not paid the money to the plaintiffs, though they have called for the same. The question that arises in the case is, whether such remittance of the money by the defendants was authorized by the plaintiffs, or can upon the facts in the case be regarded as a remittance at the plaintiffs' risk by which the defendants are discharged from liability.

There was no express order or authority from the plaintiffs to the defendants to remit the money. Can one be implied?

The plaintiffs had previously directed the defendants to remit to them $150 (a part of the avails of their produce sold by the defendants,) through L. P. Waite & Co., and they had so done. Did this confer an authority, or was it an act from which an order might be implied that the balance of the sales of the same cargo of produce should be sent in the same way? We think not. The single special order as to the remittance of one sum could not be extended to any other. The plaintiffs might wish the balance to remain at Lowell, or to be remitted to some other place. Without further correspondence the defendants had no right to infer that the plaintiffs wished to have the balance remitted at their risk as the $150 had been.

" The plaintiffs expected to pay the expense of sending the balance to them." But it does not appear that they expected that any particular mode of remittance was to be adopted;—or even that the money should be remitted to them. They must of course have expected to be at the expense of remitting funds due at Lowell to Vermont if they were remitted. But their expectations were not communicated to the defendants so that they could have acted in reliance upon them.

" The plaintiffs knew it was the custom of Smith & Waite to send money to their customers in Vermont, through L. P. Waite."

Waite et al. *v.* Dodge et al.

The knowledge of such a custom did not bind them to receive their money in that way and at their own risk, unless they said or did something to authorize the defendants to understand that they were willing to have their moneys sent in that way. If a previous usage between these parties to have the plaintiff's moneys remitted in this way had been shown, that would be ground for infering that they understood that their general usage should be followed in this case. But no such usage is shown. The custom of the defendants could not establish a usage of trade by which the plaintiffs would be bound. Again, how vague is this alleged custom of the defendants? It is not said *at whose risk*, by this custom the moneys were sent,—or at whose expense,—or that the plaintiffs had any knowledge on these points.

So notice to the plaintiffs, that the moneys had been sent did not bind the plaintiffs to an assent that the remittance should be at their risk and operate as payment,—nor did the subsequent demand upon L. P. Waite to pay over the funds he had received, imply that if not paid over the plaintiffs should not look to the defendants for their money.

None of these facts, which are relied on by the defendants, show any authority, express or implied, that the remittance might be made as it was ;—or any subsequent assent to it, so as to discharge the defendants from liability. The act of the defendants in sending the money must be regarded as a mere volunteer act on their part—without authority, and therefore not operating to release them from their liability to the plaintiffs.

Judgment reversed, and judgment for the plaintiffs upon the report with added interests and costs.